**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DEONNES WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> LAS VEGAS METROPOLITAN POLICE ) <br> DEPARTMENT, a political subdivision of the ) <br> State of Nevada and the County of Clark; ) <br> BARRY REDMOND, individually, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:13-cv-1340-GMN-NJK <br><br> **ORDER** |

Pending before the Court are two Motions for Summary Judgment, one filed by Defendant Las Vegas Metropolitan Police Department ("LVMPD") and the other filed by Defendant Officer Barry Redmond ("Redmond") (collectively, "Defendants"). (ECF Nos. 71, 72). Plaintiff Deonnes Williams ("Plaintiff") filed an Omnibus Opposition to both Motions for Summary Judgment (ECF No. 80), and Defendants filed a joint Reply (ECF No. 81).

Also pending before the Court is Plaintiff's Motion for Partial Judgment (ECF No. 73), to which Defendant Redmond filed a Response (ECF No. 79), and Plaintiff filed a Reply (ECF No. 84). For the reasons discussed below, the Court **GRANTS** Defendants' Motions for Summary Judgment (ECF Nos. 71, 72) and **DENIES** Plaintiff's Motion for Partial Summary Judgment (ECF No. 73).

**I.   BACKGROUND**

This case arises from injuries that Plaintiff allegedly suffered while incarcerated at the Clark County Detention Center ("CCDC"). (Am. Compl. ¶ 19, ECF No. 48). On December 31, 2011, paramedics found Plaintiff asleep in his vehicle, took his keys, and contacted LVMPD.

(Pl. Dep. 20:10–24, Ex. A to LVMPD Mot. Summ. J., ECF No. 71).[1]  When the LVMPD officers arrived, they ran Plaintiff's license and registration, and they found that he had an active warrant, so they took him into custody and brought him to CCDC. (*Id.* at 21:2–7). Plaintiff waited unrestrained in the open booking area of CCDC, where "there was a lot of commotion" because it was New Year's Eve. (*Id.* at 26:11–17).  At some point, upon witnessing an incident with a different detainee, Plaintiff stated aloud, "Wow that's some crazy shit." (*Id.* at 31:8–21).  An officer, later identified as Redmond, heard Plaintiff's comment, and took him from his seat in the booking area down a hallway accompanied by several other officers. (CCDC Surveillance Video, Ex. 3 to Pl. Mot. Partial Summ. J. 12:34:30 AM, ECF No 73).  At this point, Plaintiff is unclear whether he was "pushed or thrown down the hall" or whether he "stumbled because of the force" of Redmond taking him down the hall and then fell to the ground. (Pl. Dep. 34:5–11, 35:10–16, ECF No. 71).  Once on the ground, the officers handcuffed him, and Plaintiff said that he "heard a crunching sound" referring to his arm. (*Id.* at 36:5–11, 43:24–44:9).  The officers then placed Plaintiff in a side cell. (*Id.* at 37:3-4).  Plaintiff recalled informing the officers that the handcuffs were too tight, and that he was ignored. (*Id.* at 37:7–13).  Further, Plaintiff admitted that he did not tell anyone at CCDC that he was injured because he stated, "I had approached them on numerous occasions and they ignored me . . . [so] I just felt that obviously it wouldn't do any good to tell them anything." (*Id.* at 42:10–18). Plaintiff was released the next morning, and he visited the doctor later that day. (*Id.* at 45–46). He testified that he had a "fractured elbow" (*id.* at 46:13–15), although Defendant's medical expert explained that Plaintiff's medical record from that visit indicated a "Sprain Elbow/Forearm NOS Treat as Sprain" (McKenzie Expert Report, Ex. D to LVMPD Mot. Summ. J. 1, ECF No. 71).[2]

---

[1] The parties provide Plaintiff's Deposition, Redmond's Deposition, and CCDC Surveillance Video as identical exhibits. (Ex. A–C to LVMPD Mot. Summ. J., ECF No. 71); (Ex. 1–4 to Pl. Mot. Partial Summ. J., ECF No. 73).
[2] Plaintiff does not provide medical records or a medical expert.

As a result of this injury, on June 21, 2013, Plaintiff initiated this action in state court, alleging four causes of action, with claim two solely against LVMPD, and the rest of the claims against both Defendants: (1) 42 U.S.C. § 1983; (2) 42 U.S.C. § 1983 – *Monell* claim; (3) negligence; and (4) assault and battery. (Compl. ¶¶ 18–40, ECF No. 1).  Defendant LVMPD and original Defendant Sheriff Douglas Gillespie ("Gillespie") removed the action to this Court on July 26, 2013. (Not. of Removal, ECF No. 1).  LVMPD filed its Answer to Plaintiff's Complaint on August 16, 2013, (ECF No. 10), and, on that same day, Defendant Gillespie filed a Motion to Dismiss (ECF No. 11).  The Court granted Defendant Gillespie's Motion to Dismiss. (ECF No. 30).  Upon motion by Plaintiff, the Court then granted Plaintiff leave to file an Amended Complaint substituting Defendant Doe Corrections Officer I with Defendant Redmond. (*See* ECF Nos. 42, 47).  On August 21, 2014, LVMPD filed an Answer to the Amended Complaint (ECF No. 52) and Redmond filed a Motion to Dismiss (ECF No. 53).  The Court denied Defendant Redmond's Motion to Dismiss. (ECF No. 61).  The parties then filed the instant Motions for Summary Judgment. (ECF Nos. 71–73).

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth "specific facts" by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The nonmoving party's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  However, if the evidence of the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *See id.* at 249–50 (citations omitted).

### III. DISCUSSION

#### A. Section 1983 Claims

Plaintiff's first cause of action alleges Defendants deprived him of his "clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments." (Am. Compl. ¶ 25).  Specifically, Plaintiff asserts his constitutional deprivations were: excessive and unreasonable force; use of unlawful, reckless, deliberately indifferent, and conscience shocking force; and denial of medical care. (*Id.*).  The Court construes these allegations collectively as a deprivation of Fourteenth Amendment rights through excessive force and deliberate indifference brought under § 1983.

Section 1983 actions involve the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  To bring a successful § 1983 claim, a plaintiff must allege (1) a violation of a constitutional right and (2) must show that the alleged violation was committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48–49 (1988).  Moreover, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

### 1. Excessive Force

The Due Process Clause of the Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment. *Graham*, 490 U.S. at 395 n. 10 (citing *Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979)); *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1197 (9th Cir. 2002). To resolve a pretrial detainee's excessive-force claims under the Due Process Clause, a trial court must balance a number of factors to determine "the reasonableness of the officers' actions given the circumstances." *White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990). The Ninth Circuit articulated these factors in *White v. Roper*: "(1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether force was applied in a good faith effort to maintain and restore discipline." *Id.* Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "A challenged action . . . reasonably related to a legitimate government objective will not, without more, constitute punishment. Conversely, a court may infer an intent to punish when there is no such reasonable relation." *Id.* at 1504; *see also Bell*, 441 U.S. at 538 ("A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."). Even a lesser disturbance in the corrections setting can "require police officials to act quickly and decisively." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 9 (quotations omitted).

Defendant Redmond argues that his "use of force was reasonable considering the circumstances." (Redmond Mot. Summ. J. 2:23–24, ECF No. 72). Redmond contends that in an unrestrictive environment such as the open booking area, where the "detainees were unsecured and unrestrained," officers must respond quickly to prevent "any outbursts that

would tend to incite the involvement" of other detainees. (*Id.* at 7:12–23). Redmond concludes that he "reacted quickly and decisively to Plaintiff [sic] disruption for the purpose of gaining control, not with the any [sic] malice or intent to harm Plaintiff." (*Id.* at 10:22–23).

Plaintiff acknowledged that "there was a lot of commotion" in the open booking area because it was New Year's Eve. (Pl. Dep. 26:11–17). Plaintiff contends, however, that "Defendant Redmond can not presented [sic] any affirmative evidence that his use-of-force upon [Plaintiff] was a good-faith effort to maintain discipline." (Pl. Mot. Partial Summ. J. 10:6–7, ECF No. 73).

Both parties provide the same video surveillance of the incident from CCDC. (Ex. C to LVMPD Mot. Summ. J., ECF No. 71); (Exs. 3–4 to Pl. Mot. Partial Summ. J., ECF No. 73) ("CCDC Surveillance Video"). The existence of the video does not change the usual rules of summary judgment: in general, the court will draw all reasonable inferences from the video in plaintiff's favor. *Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n. 1 (9th Cir. 2007). However, if the video "blatantly contradict[s]" a party's account, "so that no reasonable jury could believe it," the court need not credit the contradicted version on summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

From the video, it is clear that Redmond and the other officers are maintaining control of the open booking area. In the video, a group of officers, including Redmond, takes a different detainee from the booking area down the hall to put him in a side holding cell. (CCDC Surveillance Video 12:33:15–12:33:26 AM). The officers return back through the booking area. (*Id.* at 12:34:22–12:34:30 AM). Redmond, the last officer to walk through, pivots and then grabs Plaintiff. (*Id.* at 12:34:31 AM). According to Plaintiff, Redmond's action was brought on by his statement, "Wow, that's some crazy shit." (Pl. Dep. 31:8–21). There is no audio on the surveillance video, so the video neither corroborates nor contradicts Plaintiff's testimony, and Redmond testified that he does not recall what Plaintiff said. (*See* Redmond

Dep. 54:19–55:1, Ex. B to LVMPD Mot. Summ. J., ECF No. 71).  After Redmond takes Plaintiff toward the hall, the other officers all turn around and follow them. (CCDC Surveillance Video 12:34:33 AM).  From this video, it is clear that Redmond believed Plaintiff to be causing a disturbance, and Plaintiff's own testimony about his statement supports this conclusion.  Further, contrary to Plaintiff's argument, Redmond's swift movements in grabbing Plaintiff, taking him down the hall, and handcuffing him, amount to a good-faith effort to maintain discipline, not punish Plaintiff. *See White*, 901 F.2d at 1504; *see also Bell*, 441 U.S. at 547 ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").  Although Plaintiff alleges that his injury occurred while the officers were handcuffing him, the placement of handcuffs alone demonstrates a judgment call by the officer to maintain discipline, not a constitutional violation. *See Hong Ha v. City of Liberty Lake*, No. CV-08-382-RHW, 2010 WL 4065491, at *6 (E.D. Wash. Oct. 15, 2010) ("the use of handcuffs . . . is a standard practice in nearly every arrest.  To allow excessive force claims to survive summary judgment every time a plaintiff alleged that handcuffs were painful would disregard the inherent necessity of the use of handcuffs in the context of an arrest") (quoting *Orsak v. Metro. Airports Comm'n Airport Police Dep't*, 675 F.Supp.2d 944, 957 (D. Minn. 2009)).

Officers must use an objectively reasonable amount of force under the circumstances. *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006). Here, it is undisputed that Plaintiff made a comment that could be viewed as disruptive in an open booking room with many unrestrained detainees.  Under these circumstances, it was objectively reasonable to restrain Plaintiff in handcuffs. *See, e.g.*, *id.* at 1096–97.  Accordingly, the Court finds that Redmond is entitled to summary judgment on Plaintiff's § 1983 excessive force claim.

### 2. Deliberate Indifference

Plaintiff's first count also alleges deliberate indifference on the part of Defendants for failing to provide necessary medical care. (Am. Compl. ¶ 25.b., ECF No. 48).

Generally, a prisoner's deliberate indifference claims arise from the Eighth Amendment's safeguard against cruel and unusual punishment. *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1187–88 (9th Cir. 2002). However, when an individual has not been convicted of a crime, but is instead a pretrial detainee, his rights derive from the Due Process Clause of the Fourteen Amendment rather than the Eighth Amendment. *Id.* at 1187 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)). The Due Process Clause of the Fourteenth Amendment imposes, at a minimum, the same duty as the Eighth Amendment that "persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Id.* (quoting *Carnell v. Grimm*, 74 F .3d 977, 979 (9th Cir. 1996)).

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). However, the deliberate indifference test is not an easy test for a plaintiff to satisfy. *Hallett v. Morgan*, 296 F.3d 732, 745 (9th Cir. 2002) ("The Eighth Amendment is not a basis for broad prison reform. It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. Rather, the Eighth Amendment proscribes the unnecessary and wanton infliction of pain") (quotations omitted). The test for deliberate indifference contains two parts. "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096 (quotations omitted). "Second, the plaintiff must show the defendant's response to the

need was deliberately indifferent." *Id.* Such deliberate indifference is shown by proving "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* However, "an 'inadvertent [or negligent] failure to provide adequate medical care' alone does not state a claim under § 1983." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice.").

Redmond argues that "being in handcuffs in a locked cell is not a risk of sufficiently serious harm" because putting detainees in handcuffs is "standard practice." (Redmond Mot. Summ. J. 5:14–17, ECF No 72). Redmond also contends that "he had no culpable state of mind because Plaintiff admits he never told anyone at the CCDC that he was injured." (*Id.* at 5:12–13). Plaintiff counters that he "faced a substantial risk of serious harm when he was violently grabbed and eventually taken to the ground and suffered a fractured elbow as he was being handcuffed." (Pl. Resp. 11:16–18, ECF No. 80). Plaintiff further contends that he did not tell Defendants about his arm injury because he "felt that is wouldn't do any good to tell them anything" because the officers had already "ignored [his] complaints about the tightness of the cuffs." (*Id.* at 12:12–16).

As the Court has already found above (*see supra* Part III.A.1.), Redmond's use of handcuffs on Plaintiff was objectively reasonable. Additionally, Plaintiff did not inform Defendants of his injury. (Pl. Dep. 42:10–43:1, 45:8–10). Without anything further, Plaintiff's complaints about the handcuffs were not sufficient to make Defendants subjectively aware of Plaintiff's injury. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). On these facts, no reasonable juror could conclude that Redmond was aware of and consciously disregarded the

injury to Plaintiff's elbow.  Accordingly, Redmond is entitled to summary judgment on Plaintiff's denial of medical care claim.[3]

### B. State Law Claims

Plaintiff's third and fourth causes of action allege state law claims against all defendants for negligence and assault and battery, respectively. (Am. Compl. ¶¶ 38–47).  Plaintiff's negligence cause of action is essentially two separate claims, one for Redmond's allegedly negligent use of force and one for LVMPD's negligence in failing to properly discipline Redmond, along with overall policymaking failures. (*Id.* ¶¶ 38–44).  Plaintiff's fourth cause of action alleges assault and battery by Defendants.[4] (*Id.* ¶¶ 45–47). Defendants contend that they are entitled to summary judgment on all of Plaintiff's state law claims because those claims are barred by Nevada's discretionary-act immunity statute. (*See* Redmond Mot. Summ. J. 13:1–15:7); (LVMPD Mot. Summ. J. 13:6–14:8).

#### 1. Negligence Claim Against Redmond

Nevada's general waiver of sovereign immunity contains exceptions, and one of those exceptions is that no negligence action may be brought against an officer or employee of Nevada "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . , whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2); *see also Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014)

---

[3] Because the Court finds that Plaintiff did not suffer a constitutional violation of excessive force or deliberate indifference, the Court need not examine Defendants' argument for qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate . . . constitutional rights of which a reasonable person would have known."). Plaintiff also improperly includes Defendant LVMPD under its first cause of action because a municipality can only be held liable for constitutional violations through a § 1983 *Monell* claim.  Plaintiff brings a separate *Monell* claim against LVMPD as its second cause of action. (Am. Compl. ¶¶ 31–37, ECF No. 48).  This claim, however, must fail based on the lack of constitutional violation established herein. (*See supra* Part III.A.).  Accordingly, the Court grants Defendants' Motions for Summary Judgment on claim two.

[4] LVMPD, a municipal entity, could not have assaulted and battered Plaintiff.  Although Plaintiff does not specifically allege a theory of *respondeat superior*, the Court construes Plaintiff's allegations as such, in which LVMPD is allegedly liable because Redmond acted in his employment and under the control of LVMPD.

("[D]iscretionary-function immunity under NRS 41.032 does not include intentional torts and bad-faith conduct"). Nevada looks to federal law regarding the Federal Tort Claims Act (the "FTCA") when analyzing claims of discretionary-act immunity, and has adopted the *Berkovitz–Gaubert* test for determining whether a decision falls within the scope of that immunity. *Martinez v. Maruszczak*, 168 P.3d 720, 727–29 (Nev. 2007); *see also Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1066 n. 50 (Nev. 2007) ("The discretionary-act immunity provision contained in NRS 41.032(2) is 'virtually identical' to the discretionary-act immunity provision found in the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (2000)."). Under that test, in order to qualify for discretionary-act immunity, "a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez,* 168 P.3d at 729.[5] The Supreme Court of Nevada further clarified that "decisions at all levels of government, including frequent or routine decisions, may be protected by discretionary-act immunity, if the decisions require analysis of government policy concerns." *Id.* The focus of this test is not an officer's "subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 728 (quotations omitted).

The Court finds that Plaintiff's claims against Redmond for negligent use of force are barred by NRS § 41.032(2). "An officer's decision as to how to accomplish a particular seizure or search is generally considered a discretionary determination under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007); *see also Seiffert v. City of Reno*, 2014

---

[5] In *Martinez*, the Nevada Supreme Court adopted the *Berkovitz–Gaubert* test in order to "clarify the test for evaluating claims of discretionary-function immunity," and thereby superseded the two other tests Nevada courts had been applying prior to *Martinez*: the planning-versus-operational test and the discretionary-versus-ministerial test. *Martinez*, 168 P.3d at 726–27; *see Hyatt*, 335 P.3d at 135 ("When this court adopted the federal test in *Martinez*, we expressly dispensed with the earlier tests used by this court to determine whether to grant a government entity or its employee immunity").

WL 605863, at *1 (Nev. Feb. 13, 2014) ("A police officer's discretionary decisions concerning the scope and manner of conducting an investigation are immune under NRS 41.032, so long as they are based on police policy and do not violate a mandatory directive."). The two main limitations regarding immunity are actions taken in bad faith and constitutional violations. *See Jarvis v. City of Mesquite Police Dep't*, No. 2:09-cv-00851-PMP-GWF, 2012 WL 600804, at *5 (D. Nev. Feb. 23, 2012). Here, as the Court found above (*see supra* Part III.A.1.), Redmond did not commit a constitutional violation, nor could his act of maintaining discipline in the correctional facility be considered a bad-faith action. *See id.* (applying discretionary-act immunity to Plaintiff's negligent supervision claim because "[a]lthough Plaintiff argues City acted in bad faith and violated Plaintiff's constitutional rights, Plaintiff presents no evidence raising a genuine issue of material fact that it did so"). As such, NRS 41.032 bars Plaintiff's negligence claims against Redmond, and the Court grants summary judgment to Redmond as to this claim.

### 2. Assault and Battery Claims Against Redmond

"To establish an assault claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact." *Burns v. Mayer*, 175 F.Supp.2d 1259, 1269 (D. Nev. 2001) (citing Restatement (Second) of Torts, § 21 (1965)). "To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur." *Id.* (citing Restatement (Second) of Torts, §§ 13, 18). Further, "[u]nder Nevada law, a police officer is privileged to use the amount of force reasonably necessary." *Vasquez–Brenes v. LVMPD*, 51 F.Supp.3d 999, 1014 (D. Nev. 2014). However, "[a]n officer who uses more force than is reasonably necessary is liable for battery." *Id.*; *see also Ramirez v. City of Reno*, 925 F.Supp. 681, 691 (D. Nev. 1996) (applying Nevada law). Accordingly, the standard for battery by a police officer under Nevada law is the same as under a § 1983 claim. *Vasquez–Brenes,* 51

F.Supp.3d at 1014; *see also Ramirez*, 925 F.Supp. at 691 ("The standard for common-law assault and battery by a police officer thus mirrors the federal civil rights law standard: Liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances."). Therefore, because Redmond used an objectively reasonable amount of force, as explained in the analysis of Plaintiff's § 1983 excessive force claim, the Court must grant Redmond's motion for summary judgment on Plaintiff's assault and battery claims. (*See supra* Part III.A.1.).

### 3. State Law Claims Against LVMPD

Under Nevada's theory of *respondeat superior*, an employer may be held liable for both negligence and intentional torts of employees. *See Switzer v. Rivera*, 174 F.Supp.2d 1097, 1106 (D. Nev. Nov. 30, 2011). Here, Plaintiff failed to show evidence of a genuine issue of material fact as to the liability of Redmond, LVMPD's employee. Without wrongfulness of the employee, there can be no employer liability under *respondeat superior*. Accordingly, LVMPD is also entitled to summary judgment on Plaintiff's state law claims of negligence, assault, and battery.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant LVMPD's Motion for Summary Judgment (ECF No. 71) and Defendant Redmond's Motion for Summary Judgment (ECF No. 72) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 73) is **DENIED**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __22__ day of March, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court